5.17.1.

# Rand McNally & Company Pension Plan
(As Amended and Restated Effective as of
July 1, 1993)

Note:

All references to Nicholstone are irrelevent for purposes of the
Book Services transaction, with the exception of any
Nicholstone employee who subsequently became employed by
Book Services.  As of August 31, 1996, Book Services is not
aware of any such employee.

# Rand McNally & Company Pension Plan
(As Amended and Restated Effective as of July 1, 1993)

## Contents

| Section | | Page |
|---|---|---|
| | **Article I. The Plan** | |
| 1.1 | Establishment and Amendment of the Plan | 1 |
| 1.2 | Applicability of Plan | 1 |
| | **Article II. Definitions** | |
| 2.1 | Definitions | 2 |
| 2.2 | Gender and Number | 11 |
| | **Article III. Determination of Hour of Service, Break in Service, Vesting Service, and Benefit Service** | |
| 3.1 | Hour of Service | 12 |
| 3.2 | Break in Service | 13 |
| 3.3 | One-Year Break in Service | 14 |
| 3.4 | Year of Service | 14 |
| 3.5 | Vesting Service | 14 |
| 3.6 | Benefit Service | 16 |
| 3.7 | Leased Employees | 18 |
| 3.8 | Special Provisions for Participants who Enter the Armed Forces | 18 |
| 3.9 | No Duplication of Service | 18 |
| | **Article IV. Eligibility and Participation** | |
| 4.1 | Date of Participation | 19 |
| 4.2 | Reentry into Plan Following a Break in Service | 20 |
| 4.3 | Duration | 20 |
| 4.4 | Transferred Employees | 20 |
| 4.5 | Employee of a Nonparticipating Affiliate who Becomes a Participant Following a Break in Service | 21 |

# Rand McNally & Company Pension Plan
(As Amended and Restated Effective as of July 1, 1993)

## Contents

| Section | | Page |
|---|---|---|
| **Article V. Benefits** | | |
| 5.1 | Normal Retirement Benefits | 22 |
| 5.2 | Early Retirement Benefits | 23 |
| 5.3 | Disability Retirement Benefits | 24 |
| 5.4 | Deferred Vested Retirement Benefits | 26 |
| 5.5 | Preretirement Survivor Annuity Benefits | 26 |
| 5.6 | Qualified Joint and Survivor Annuity | 30 |
| 5.7 | Explanation Relating to Survivor Annuities | 31 |
| 5.8 | Single Life Annuity | 31 |
| 5.9 | Optional Methods of Payment | 32 |
| 5.10 | Payment of Small Amounts | 34 |
| 5.11 | Maximum Annual Benefits | 36 |
| 5.12 | Protection of Accrued Benefits | 37 |
| 5.13 | Employees Who Participated in Other Plans | 38 |
| 5.14 | Prior Plan Application and Retiree Benefit Increase | 39 |
| **Article VI. Retirement Trust Balance** | | |
| 6.1 | Establishment of Retirement Trust Balances | 40 |
| 6.2 | Valuation Date | 40 |
| 6.3 | Adjustment | 40 |
| 6.4 | Death Before Commencement of Benefits | 41 |
| 6.5 | Death After Commencement of Benefits | 41 |
| 6.6 | Distribution on Retirement or Termination | 41 |
| 6.7 | Distribution on Other Termination of Employment | 42 |
| 6.8 | Method of Payment | 42 |
| 6.9 | Special Rules for Married Members | 43 |
| **Article VII. Commencement of Payments and Duration** | | |
| 7.1 | Commencement and Duration | 45 |
| 7.2 | Reemployment After Benefit Commencement but Prior to Attaining Normal Retirement Age | 46 |
| 7.3 | Employer After Attaining Normal Retirement Age | 47 |
| 7.4 | Suspension of Benefits Notice and Procedures | 48 |

# Rand McNally & Company Pension Plan
(As Amended and Restated Effective as of July 1, 1993)

# Contents

| Section | | Page |
|---|---|---|
| 7.5 | Minimum Distributions | 48 |
| 7.6 | Required Distributions | 48 |
| 7.7 | Additional Distribution Requirements | 50 |
| 7.8 | Withholding and Rollovers | 51 |
| | **Article VIII. Incompetency** | |
| 8.1 | Incompetency | 52 |
| | **Article IX. Nonalienation of Benefits** | |
| 9.1 | Nonalienation of Benefits | 53 |
| 9.2 | Qualified Domestic Relations Orders | 53 |
| | **Article X. Financing** | |
| 10.1 | Financing | 56 |
| 10.2 | Contributions | 56 |
| 10.3 | Nonreversion | 57 |
| | **Article XI. Administration** | |
| 11.1 | Plan Administrator and Fiduciary | 58 |
| 11.2 | Compensation and Expenses | 58 |
| 11.3 | Manner of Action | 58 |
| 11.4 | Chairman, Secretary, and Employment of Specialists | 58 |
| 11.5 | Assistance | 59 |
| 11.6 | Records | 59 |
| 11.7 | Rules | 59 |
| 11.8 | Administration | 59 |
| 11.9 | No Enlargement of Employee Rights | 60 |
| 11.10 | Appeals from Denial of Claims | 60 |
| 11.11 | Notice of Address and Missing Persons | 61 |
| 11.12 | Data and Information for Benefits | 62 |

# Rand McNally & Company Pension Plan
(As Amended and Restated Effective as of July 1, 1993)

# Contents

| Section | | Page |
|---|---|---|
| 11.13 | Indemnity for Liability | 62 |
| 11.14 | Effect of a Mistake | 62 |
| 11.15 | Self Interest | 62 |
| | **Article XII. Vesting** | |
| 12.1 | Vesting | 63 |
| 12.2 | Amendment of Vesting Schedule | 63 |
| | **Article XIII. Amendment and Termination** | |
| 13.1 | Amendment and Termination | 64 |
| 13.2 | Distribution on Termination | 64 |
| 13.3 | Merger, Consolidation, or Transfer | 65 |
| 13.4 | Restrictions on Benefits | 66 |
| | **Article XIV. Participation in and Withdrawal from the Plan by an Employer** | |
| 14.1 | Participation in the Plan | 67 |
| 14.2 | Withdrawal from the Plan | 68 |
| | **Article XV. Top-Heavy Provisions** | |
| 15.1 | Application of Top-Heavy Provisions | 69 |
| 15.2 | Definitions | 69 |
| 15.3 | Vesting Requirements | 71 |
| 15.4 | Minimum Benefit | 71 |
| 15.5 | Limit on Annual Additions: Combined Plan Limit | 72 |
| 15.6 | Collective Bargaining Agreements | 73 |
| | **Article XVI. Miscellaneous** | |
| 16.1 | Internal Revenue Service Approval | 74 |
| 16.2 | Applicable Law | 74 |
| 16.3 | Severability | 74 |
| 16.4 | No Guarantee | 74 |

# Rand McNally & Company Pension Plan
(As Amended and Restated Effective as of July 1, 1993)

## Contents

| Section | | Page |
|---------|-----|------|
| 16.5 | No Enlargement of Employee Rights | 74 |
| 16.6 | Extent of Liability | 75 |
| 16.7 | Counterparts | 75 |
| 16.8 | Plan Binding on Successors | 75 |
| 16.9 | Headings | 75 |
| | **Appendix A** | 76 |

# Article I. The Plan

## 1.1 Establishment and Amendment of the Plan

Rand McNally & Company (hereinafter referred to as the "Company") heretofore established and presently maintains a defined benefit plan for the benefit of its eligible Employees and eligible Employees of participating Affiliates. Said plan was established effective as of January 1, 1958 and was last amended effective as of January 1, 1989. Said plan is hereby further amended and restated as set forth herein, effective January 1, 1989 (except as otherwise specifically provided) and shall continue to be known as the "Rand McNally & Company Pension Plan" (hereinafter referred to as the "Plan").

Effective as of June 30, 1993, the Plan is amended to provide for the merger of the Pension Retirement Plan of Nicholstone Companies, Inc. (hereinafter referred to as the "Nicholstone Plan") into this Plan. The Nicholstone Plan was formerly known as the Pension Retirement Plan of Nicholstone Book Bindery, Inc., Looseleaf, Inc., and Music City Album Company, Inc., and was originally effective October 1, 1979.

## 1.2 Applicability of Plan

The provisions of this Plan as set forth herein are applicable only to the Employees of an Employer in current employment on or after July 1, 1993, except as specifically provided herein. Except as so provided, any person who was covered under the Plan as in effect on December 31, 1988 and whose Vesting Service terminated under the Plan prior to January 1, 1989 and who was entitled to benefits under the provisions of the Plan shall continue to be entitled to the same amount of benefits without change under this Plan.

# Article II. Definitions

## 2.1 Definitions

Whenever used in the Plan, the following words and phrases shall have the respective meanings stated below unless a different meaning is plainly required by the context, and where the defined meaning is intended, the term is capitalized.

(a)    "Act" means the Employee Retirement Income Security Act of 1974, as it may be amended from time to time.

(b)    "Actuarial Equivalent" means a benefit having the same value as the benefit which it replaces, computed on the bases of the 1984 UP Mortality Table, weighted 80 percent male and 20 percent female, and an interest rate assumption as follows:

    (1)    with respect to calculations pursuant to sections 5.1(e), 5.6, 5.8, 5.9(a)(1), 5.9(a)(2), 5.10(b), 5.13, 6.3(d), 7.2, and 7.3: 8 percent;

    (2)    with respect to all other calculations: the immediate rate (in determining the present value of immediate annuities) and the immediate and deferred rate (in determining the present value of deferred annuities) which would be used as of January 1 in the year of determination by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution upon the termination of a defined benefit plan.

(c)    "Actuary" means a person (or a firm of which he is a member) who is an "enrolled actuary" under the Act, and who is chosen by but is independent of the Company.

(d)    "Adoption Date" means the date on which the Company formally executes this amended and restated Plan.

(e)    "Affiliate" means—

    (1)    any corporation other than the Company, i.e., either a subsidiary corporation or an affiliated or associated corporation of the Company, which together with the Company is a member of a "controlled group" of corporations (as defined in Code section 414(b));

    (2)    any organization which together with the Company is under "common control" (as defined in Code section 414(c));

    (3)    any organization which together with the Company is an "affiliated service group" (as defined in Code section 414(m)); or

    (4)    any other entity required to be aggregated with the Company pursuant to regulations under section 414(o) of the Code.

(f) "Annuity Starting Date" means the first day of the first period for which a Participant is entitled, or would be entitled, to receive a retirement benefit under the Plan.

(g) "Beneficiary" means, with respect to a Member's Retirement Trust Balance—

(1) The person or persons designated by a Member in the last effective Beneficiary designation form filed with the Committee; or

(2) If no person is so designated, or if no person so designated is living when a benefit becomes payable to him—

(A) the Member's spouse, provided the Member and his spouse were married throughout the one-year period ending on the date of the Member's death; or

(B) if the Member was not married throughout the one-year period ending on the date of death, the Member's estate (or the estate of the last Beneficiary to be receiving benefits prior to the Member's death).

Every Beneficiary designation by a Member shall be made in writing on an appropriate form filed with the Committee. Such designation shall not be effective unless and until the Committee actually receives it and enters it in the Committee's records.

The Committee shall require the consent of a married Member's spouse to any Beneficiary designation or change of Beneficiary designation unless the Member establishes to the satisfaction of the Committee that such consent may not be obtained because of reasons described in the Code or regulations thereunder. A married Member's Beneficiary designation shall not take effect unless the Member's spouse consents in writing to such designation and the spouse's consent acknowledges the effect of such designation, and is witnessed by a person designated by the Committee or a notary public. Spousal consent to a Beneficiary designation shall be irrevocable, but shall not apply to future Beneficiary designations unless the consent specifically so states, and shall be effective only with respect to the spouse signing the consent. A Member may otherwise change his Beneficiary designation at any time and from time to time without the consent of or notice to any person previously designated by him.

(h) "Benefit Service" means a period of employment, as defined in section 3.6.

(i) "Board of Directors" means the board of directors of the Company.

(j)  "Break in Service" means an absence from employment, as defined in section 3.2.

(k)  "Code" means the Internal Revenue Code of 1986, as it may be amended from time to time.

(l)  "Committee" means the committee appointed by the Company's Board of Directors to administer the Plan.

(m)  "Company" means Rand McNally & Company.

(n)  "Compensation" means, effective January 1, 1989, a Participant's pay, determined as follows:

(1)  For all purposes of the Plan, except as otherwise specified, Compensation means an Employee's wages, salaries, noncash payments (including fringe benefits), and other amounts received for personal services rendered in the course of employment with Employers and nonparticipating Affiliates and required to be reported for federal income tax purposes on Form W-2 or any successor form, whether or not subject to withholding, but excluding—

(A)  the value of any nonqualified stock options granted to or exercised by a Highly Compensated Employee; and

(B)  with respect to Highly Compensated Employees, income from the sale of Company stock, acquired through the exercise of employer stock options.

Compensation shall be determined prior to any election to reduce an Employee's wages in lieu of benefits under Code section 401(k) or 125.

(2)  For purposes of satisfying the limits on annual benefits described in section 5.11 and applying the limits of Code section 415, Compensation means an Employee's compensation as defined in Treasury regulation section 1.415-2(d).

(3)  For purposes of determining whether an individual is a Highly Compensated Employee, Compensation means an Employee's compensation as defined in Code section 414(q)(7) and the applicable Treasury regulations thereunder.

For Plan Years beginning after December 31, 1988 but prior to January 1, 1994, the Compensation of each Employee that may be taken into account under paragraphs (1) and (2) above shall not exceed the first $200,000 of an Employee's Compensation (as adjusted by the Secretary of the Treasury under Code sections 401(a)(17) and 415(d)). For Plan Years beginning after December 31, 1993, the Compensation of each Employee that may be taken into

account under paragraphs (1) and (2) above shall not exceed the first $150,000 of an Employee's Compensation (as adjusted by the Secretary of the Treasury under Code sections 401(a)(17) and 415(d)).

In determining the Compensation of an Employee for purposes of this limitation, the rules of Code section 414(q)(6) shall apply, except that in applying such rules, the term "family," shall include only the Employee's spouse and any lineal descendants of the Employee who have not attained age 19 before the close of the Plan Year.

(o)     "Covered Compensation" means, for any Plan Year, the average (without indexing) of the Social Security Wage Bases in effect for each calendar year during the 35-year period ending with the last day of the calendar year in which the Participant attains (or will attain) his Social Security Retirement Age. In determining a Participant's Covered Compensation for a Plan Year, the Social Security Wage Base for the current calendar year and any subsequent calendar year shall be assumed to be the same as the Social Security Wage Base in effect as of the beginning of the Plan Year for which the determination is being made.

A Participant's Covered Compensation for a Plan Year before the 35-year period described above shall be the Social Security Wage Base in effect as of the beginning of the Plan Year.

(p)     "Disability" means a mental or physical incapacity which shall qualify a Member for a Disability retirement benefit under section 5.3. For purposes of a Member's eligibility to receive a Disability retirement benefit, a Member shall be considered to have incurred a Disability if the Committee determines, in accordance with rules uniformly and consistently applied to all Employees in similar circumstances, and based on the opinion of a physician selected by the Committee, that—

(1)     the Member has incurred a physical or mental injury or disease,

(2)     such injury or disease prevents the Member from performing substantially all of the duties of his employment, and

(3)     such injury or disease is expected to be total and permanent.

(q)     "Earliest Retirement Age" means the earliest date on which, under the Plan, a Member could elect to receive retirement benefits.

(r)     "Effective Date" means July 1, 1993.

(s)     "Employee" means any person who is employed by the Employer, but excluding—

      (1)   any Employee who is a member of a collective bargaining unit if retirement benefits have been the subject of good-faith collective bargaining; and

      (2)   any Employee who is a nonresident alien and receives no earned income (within the meaning of Code section 911(d)(2)) from the Employer which constitutes income from sources within the United States (within the meaning of Code section 861(a)(3)).

(t)   **"Employer"** means the Company or any Affiliate which elects to become a party to the Plan, with the approval of the Company, by adopting the Plan for the benefit of its eligible Employees in the manner prescribed in Article XVI of the Plan.

(u)   **"Employment Commencement Date"** means the first day on which an Employee first performs an Hour of Service for an Employer or nonparticipating Affiliate or, if applicable, the first day following a One-Year Break in Service, on which an Employee performs an Hour of Service for an Employer or nonparticipating Affiliate.

(v)   **"Final Average Pay"** means the average Compensation of an Employee during any five consecutive calendar years of employment with an Employer in which his Compensation was highest, including any part of such period during which no Compensation was payable to him.

If an Employee completes fewer than five consecutive calendar years of employment with an Employer, Final Average Pay shall mean his average Compensation during his period of employment (based on a period of 60 months, even if his actual period of employment is less than 60 months), including any part of such period during which no Compensation was payable to him.

(w)   **"Highly Compensated Employee"** means, with respect to any Plan Year, any Employee who at any time during the preceding Plan Year (or such other period as the Company may elect pursuant to Treasury regulations—

      (1)   received Compensation (as defined in Code section 414(q)(7)) from the Employer and all Affiliates in excess of $96,368, or

      (2)   received Compensation (as defined in Code section 414(q)(7)) from the Employer and all Affiliates in excess of $64,245 and was in the top-paid 20 percent of Employees,

(3)   was an officer who received Compensation (as defined in Code section 414(q)(7)) from the Employer and all Affiliates in excess of $57,820, or, if greater, one-half of the amount in effect under Code section 415(b)(1)(A) for the preceding Plan Year, or

(4)   was a 5-percent owner.

Highly Compensated Employee also means, with respect to any Plan Year, any Employee who, at any time during such Plan Year, met the descriptions contained in paragraph (1), (2), or (3) and was among the top-paid 100 Employees or any Employee who was a 5-percent owner. A family member of a Highly Compensated Employee and a former employee shall be treated as a Highly Compensated Employee to the extent required by Code sections 414(q)(6) and (9) and the regulations thereunder. The dollar limits described in paragraphs (1), (2), and (3) will be adjusted to reflect increases in the cost of living, in the manner and at the times prescribed by the Secretary of the Treasury.

Notwithstanding the foregoing provisions of this section 2.1(w), for any Plan Year, the Company shall have the right to elect to determine the identity of its Highly Compensated Employees pursuant to a calendar year calculation election described at Treasury regulation section 1.414(q)-1T Q&A 14(b), provided that all of the requirements of the regulation applicable to such election are satisfied. In the event of such an election, Highly Compensated Employees for such Plan Year shall consist of those employees in category (1), (2), (3), or (4) during such Plan Year determined without regard to their status in the preceding Plan Year and without regard to whether such individuals are among the 100 most highly paid employees of all employees of the Company and its Affiliates.

(x)   "Hour of Service" means a period of employment, as defined in section 3.1.

(y)   "Inactive Participant" means an Employee who was a Participant but who is transferred to and is in a position of employment either—

(1)   as an Employee of an Employer where he does not meet the requirements to be a Participant; or

(2)   as an Employee of a nonparticipating Affiliate.

(z)   "Maternity or Paternity Leave" means absence from work for maternity or paternity reasons (1) by reason of pregnancy of the individual, (2) by reason of the birth of a child of the individual, (3) by reason of the placement of a child with the individual in

connection with the adoption of such child by such individual, or (4) for purposes of caring for such child for a period beginning immediately following such birth or placement.

(aa) "**Member**" means a Participant, Inactive Participant, or other former Employee who is receiving or entitled to receive benefits under this Plan.

(bb) "**Nicholstone Benefit**" means the accrued benefit to which an employee or former employee of Nicholstone Companies, Inc. (or its predecessors) is entitled pursuant to the terms of the Nicholstone Plan equal to $5.00 per month multiplied by the number of years of benefit service credited to such employee or former employee under the Nicholstone Plan prior to October 1, 1979.

(cc) "**Nicholstone Employee**" means a person who was an employee of Nicholstone Companies, Inc. on July 31, 1992 and an employee of the Company on August 1, 1992.

(dd) "**Nicholstone Plan**" means the Pension Retirement Plan of Nicholstone Companies, Inc., as in effect on June 30, 1993.

(ee) "**One-Year Break in Service**" means a period of absence from employment, as defined in section 3.3.

(ff) "**Participant**" means any Employee of an Employer who has met and continues to meet the eligibility requirements of the Plan set forth in section 4.1.

(gg) "**Plan**" means this Rand McNally & Company Pension Plan, as provided herein and as subsequently amended from time to time.

(hh) "**Plan Administrator**" means the entity which has been designated as the "plan administrator" as provided in section 11.1.

(ii) "**Plan Year**" means the 12-consecutive-month period ending each December 31. For purposes of the Nicholstone Plan, Plan Year shall also mean the short period commencing April 1, 1993 and ending June 30, 1993.

(jj) "**Preretirement Survivor Annuity**" means an annuity for the surviving spouse of a Member, as described in section 5.5.

(kk) "**Prior Plan**" means any defined benefit plan which is qualified under Code section 401(a) and which, in whole or in part, may be amended to constitute this Plan on the Effective Date.

(ll) "**Qualified Joint and Survivor Annuity**" means an annuity which provides payments for the lifetime of the Member, with a survivor annuity for the lifetime of the Member's spouse, as described in section 5.6.

(mm) "**Retirement**" means an Employee's Severance from Service on or after attaining his Normal Retirement Age.

(nn) "Retirement Age" means a Member's Normal Retirement Age, Early Retirement Age, Social Security Retirement Age, or Vested Retirement Age, whichever is applicable, as shown below:

    (1) "Normal Retirement Age" means, for Plan Years beginning on or after January 1, 1988, a Member's age when he has attained the later of—

        (A) his sixty-fifth birthday; or

        (B) the fifth anniversary of his commencement of participation in the Plan.

    (2) "Early Retirement Age" means a Member's age when he has both attained his fifty-fifth birthday and completed at least 15 years of Vesting Service.

    (3) "Social Security Retirement Age" means the age used as the retirement age under section 216(l) of the Social Security Act, except that such section shall be applied—

        (A) without regard to the age increase factor, and

        (B) as if the early retirement age under section 216(l)(2) of the Social Security Act were 62.

    (4) "Vested Retirement Age" means, effective January 1, 1989, a Member's age when he has completed five years of Vesting Service before his Early Retirement Age.

(oo) "Retirement Date" means a Member's Normal Retirement Date, Early Retirement Date, or Vested Retirement Date, whichever is applicable, as shown below:

    (1) "Normal Retirement Date" means the first day of the calendar month coincident with or next following the date a Member's employment with the Employer or a nonparticipating Affiliate terminates, on or after he attains his Normal Retirement Age.

    (2) "Early Retirement Date" means the first day of the calendar month coincident with or next following the date a Member's employment with the Employer or a nonparticipating Affiliate terminates on or after he attains his Early Retirement Age but not his Normal Retirement Age.

    (3) "Vested Retirement Date" means, for a Member who has attained his Vested Retirement Age and whose employment with the Employer or a nonparticipating Affiliate terminates for reasons other than normal or early retirement or death—

        (A) if the Member has completed at least 15 years of Vesting Service, the first day of any calendar month coincident with or next following his fifty-fifth birthday as of which

he makes application for his vested retirement benefit to begin, but in no event later than the first day of the calendar month next following his Normal Retirement Age, or

(B)  if the Member has not completed at least 15 years of Vesting Service, the first day of the calendar month coincident with or next following his Normal Retirement Age.

(pp)  "Retirement Fund" means the Trust Fund or any insurance fund established and maintained under any Trust Agreement or group annuity contract designated as a part of this Plan to finance the benefits under this Plan.

(qq)  "Retirement Trust" means the assets of the Trust Fund allocated toward the establishment of Retirement Trust Balances for certain Members.

(rr)  "Retirement Trust Balance" means a special account balance for certain Members, as defined in Article VI.

(ss)  "Single Life Annuity" means an annuity for the lifetime of the Member, as described in section 5.8.

(tt)  "Social Security Wage Base" means, with respect to any Plan Year, an amount equal to the maximum compensation on which the Old-Age Survivor's and Disability Insurance portion of Social Security taxes (under the Federal Insurance Contributions Act and applicable regulations) would be applicable on the first day of the Plan Year, whether or not compensation is in fact subject to such tax.

(uu)  "Trust Agreement" means any agreement in the nature of a trust established to form a part of this Plan to receive, hold, invest, and dispose of the Trust Fund.

(vv)  "Trustee" means the corporation, individual, individuals, or combination thereof, acting as trustee under the Trust Agreement at any time of reference.

(ww)  "Trust Fund" means the assets of every kind and description held under any Trust Agreement forming a part of this Plan.

(xx)  "Valuation Date" means the dates on which a Member's Retirement Trust Balance is valued.

(yy)  "Vesting Service" means a period of employment as defined in section 3.5.

(zz)  "Year of Service" means a period of employment as defined in section 3.4.

**2.2 Gender and Number**

Except when otherwise indicated by the context, any masculine terminology herein shall also include the feminine and neuter, and the definition of any term herein in the singular may also include the plural.

## Article III. Determination of Hour of Service, Break in Service, Vesting Service, and Benefit Service

### 3.1 Hour of Service

An Employee's "Hours of Service" are used to determine credit for eligibility to participate in the Plan, eligibility to receive benefits, and amount of benefits. Hours of Service shall be determined as follows:

(a)   An Employee shall receive an Hour of Service for each hour for which he is paid or entitled to payment by an Employer or nonparticipating Affiliate for the performance of duties.

(b)   An Employee shall receive an Hour of Service for each hour for which he is directly or indirectly paid or entitled to payment by an Employer or nonparticipating Affiliate on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holidays, illness, incapacity (including disability), layoff, jury duty, military duty, or leave of absence. No more than 501 Hours of Service shall be credited under this subsection for any single continuous period during which the Employee performs no duties, and no Hour of Service shall be credited based on any payment under a plan maintained solely to comply with applicable workers' compensation, unemployment compensation, or disability insurance laws, or which solely reimburses an Employee for medical or medically-related expenses incurred by the Employee.

(c)   An Employee shall receive an Hour of Service for each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by an Employer or nonparticipating Affiliate, with no duplication of credit for hours under subsections (a) or (b) and this subsection (c). With respect to periods described in subsection (b) above, crediting of back pay hours shall be subject to the limitations set forth in that subsection. No more than 501 Hours of Service shall be credited under this subsection for any single continuous period during which the Employee did not or would not have performed duties.

(d)   Solely for purposes of determining whether a One-Year Break in Service has occurred, but not for purposes of determining an Employee's Vesting Service or Benefit Service, an Employee shall receive an Hour of Service for each hour which would have been credited to such Employee but for a leave of absence from employment by reason of Maternity or Paternity Leave. If the number of hours which would have been credited to the Employee cannot be determined, eight Hours of Service shall be credited per day of such

absence. No more than 501 Hours of Service shall be credited under this subsection for any such absence. Hours of Service under this subsection (d) shall be credited in the Plan Year in which the absence from employment commences if the crediting is necessary in order to prevent a One-Year Break in Service or, in all other cases, such Hours of Service shall be credited in the following Plan Year.

(e)  An Employee shall receive an Hour of Service for each hour of the normally-scheduled workweek for each week during any period he is on any absence from work with the Employer or nonparticipating Affiliate for voluntary or involuntary military service with the United States Armed Forces, but not to exceed the period required under the law pertaining to veterans' reemployment rights; provided, however, that if he fails to report for work at the end of such absence during which he has reemployment rights under law, he shall not receive credit for hours on such leave.

(f)  An Employee shall receive an Hour of Service for each hour of the normally-scheduled workweek for each week of authorized leave of absence granted by the Employer or nonparticipating Affiliate for which he is not compensated (including any leave of absence mandated by the Family and Medical Leave Act of 1993); provided, however, that if he fails to report for work at the end of such authorized leave of absence, he shall not receive credit for hours on such leave.

For purposes of crediting hours under (b) and (c) above, the Committee shall observe and follow Department of Labor regulation section 2530.200b-2(b) and (c).

For an Employee who is paid on other than an hourly basis, Hours of Service shall be credited on the basis of 45 Hours of Service for each week for which the Employee would be credited with at least one Hour of Service under subsections (a), (b), and (c) above.

When no time records are available to determine an Hour of Service required to be credited under subsections (a), (b), and (c) above, the Employee shall be credited with 45 Hours of Service for each week for which the Employee would be required to be credited with at least one Hour of Service under subsections (a), (b), and (c) above.

## 3.2 Break in Service

Break in Service means the cessation of crediting Hours of Service when the Employee—

(a)  resigns;

(b)  is discharged;

    (c)    fails to report for work within the period required under the law pertaining to veterans' reemployment rights after he is released from military duty with the armed forces of the United States, in which case his Break in Service shall be deemed to have occurred on the first day of his authorized leave of absence for such military duty;

    (d)    is on an authorized leave of absence and fails to return to employment, in which case his Break in Service shall be deemed to have occurred on the first day of his authorized leave of absence; or

    (e)    retires or dies.

### 3.3 One-Year Break in Service

One-Year Break in Service means a Plan Year in which an Employee who has had a Break in Service has fewer than 501 Hours of Service for an Employer or a nonparticipating Affiliate.

### 3.4 Year of Service

Year of Service means any Plan Year during which an Employee completes 1,000 Hours of Service for an Employer or a nonparticipating Affiliate.

### 3.5 Vesting Service

    (a)    **Generally.** Vesting Service is used to determine a Member's eligibility to receive benefits and to determine if an Employee's Vesting Service prior to a Break in Service shall be reinstated if he is reemployed. An Employee shall receive credit for Vesting Service for his period of employment with an Employer or nonparticipating Affiliate, determined as follows:

        (1)    Vesting Service shall be determined in completed full Years of Service.

        (2)    Any Employee on January 1, 1989 shall be credited with Vesting Service equal to the full years of "vesting service" he had under the terms of the Plan as of December 31, 1988. For employment on and after January 1, 1989, an Employee shall receive credit for one full year of Vesting Service for each Year of Service he completes.

        (3)    Vesting Service shall not be deemed to have been broken—

            (A)    by any transfer of employment of an Employee between Employers or between an Employer and nonparticipating Affiliate; or

            (B)    if an Employee is receiving credit for Hours of Service under section 3.1.

(4)   With respect to employees of the Financial Publishing Division who were transferred as of April 24, 1990, as part of the sale to American Banker/The Bond Buyer, Vesting Service for such former employees with less than five years of service at time of such transfer will include service with American Banker/The Bond Buyer.

(5)   If an Employee who has had a Break in Service is subsequently reemployed by an Employer or nonparticipating Affiliate as an Employee, he shall be considered a new Employee for purposes of the Plan, except—

(A)   if at such Break in Service he became eligible for a benefit under Article V, the Vesting Service (and Benefit Service) he had at such Break in Service shall be reinstated, retroactive to his date of reemployment, upon the completion of a Year of Service following his reemployment;

(B)   if he is reemployed before he has incurred a One-Year Break in Service, his prior Vesting Service (and Benefit Service) shall be reinstated upon his reemployment; or

(C)   if neither (A) nor (B) above is applicable and if the number of consecutive One-Year Breaks in Service ending after a Break in Service does not equal or exceed the greater of five or the number of years of Vesting Service he had prior to such Break in Service, his prior Vesting Service (and Benefit Service) shall be reinstated retroactive to his date of reemployment upon the completion of a Year of Service following his reemployment.

(6)   Vesting Service shall not include any period of employment with an entity prior to the date such entity becomes an Affiliate unless the Company acts to grant Vesting Service for such employment. Except for Members who—

(A)   incur a Disability while in the active employment of an Employer or nonparticipating Affiliate; or

(B)   are employed by an Affiliate for which the Company grants a greater amount of Vesting Service,

the amount of Vesting Service granted by the Company for any period of employment with an entity prior to the date such entity becomes an Affiliate shall not exceed one year.

(b)   Vesting Service for Nicholstone Employees. Nicholstone Employees shall be credited with Vesting Service for all employment beginning on and after August 1, 1992, in accordance with section 3.5(a). Nicholstone Employees shall not be credited with Vesting Service for

any period of employment with Nicholstone Companies, Inc. prior to August 1, 1992; provided, however, that a Nicholstone Employee who was a participant in the Nicholstone Plan shall receive one year of "credited service for vesting" for any plan year under the Nicholstone Plan beginning on or after October 1, 1979, during which he was credited with 1,000 hours of service, excluding, for Nicholstone Employees who were not vested in a Nicholstone Benefit prior to a break in service, all years of credited service for vesting under the Nicholstone Plan prior to a break in service if the Nicholstone Employee's number of consecutive one-year breaks in service equals or exceeds the greater of the aggregate number of such years of service prior to the break in service, or five; and further provided, that for purposes of determining a Nicholstone Employee's entitlement to a Nicholstone Benefit, such Employee shall receive a year of credited service for vesting if he is credited with 1,000 hours of service during the period commencing on April 1, 1993 and ending March 31, 1994 and shall also receive a year of credited service for vesting if he is credited with 1,000 hours of service for the Plan Year commencing January 1, 1994 and ending December 31, 1994.

### 3.6 Benefit Service

Benefit Service is used to determine the amount of a Member's benefit.

(a)  **Generally.** A Member shall receive credit for Benefit Service determined as follows:

    (1)  Each Member shall receive credit for Benefit Service equal to the "benefit service" he had under the Plan as of December 31, 1988, determined under the provisions of the Plan on such date.

    (2)  In addition to Benefit Service under paragraph (1), the Benefit Service of a Member who was a Participant after December 31, 1988 shall include the number of calendar months, divided by 12, in which he was an Employee for at least 29 days, plus an additional month of Benefit Service for the combined period of the partial month, if any, in which he became an Employee and the partial month, if any, in which he had a Break in Service if he was an Employee during such combined period for at least 29 days. However—

        (A)  Benefit Service shall not include any Plan Year in which a Member completes fewer than 1,000 Hours of Service, excluding the Plan Year of a Member's hire and the Plan Year of a Member's termination.

(B)  Except for service in the United States Armed Forces, a Member shall not be credited with more than 6 months of Benefit Service during a period in which he is on authorized leave of absence unless the Member continues to receive Compensation from an Employer for such period.

(C)  Benefit Service shall not include any period of Vesting Service disregarded under section 3.5(d).

(D)  Benefit Service shall not include any period of employment with an entity prior to the date such entity becomes an Employer unless the Company acts to grant Benefit Service for such employment.

(E)  Benefit Service shall not include any period that a Member is an Inactive Participant under this Plan; provided, however, that Benefit Service shall include the one-year period of employment prior to the date on which the Member commenced participation in the Plan.

(3)  Effective January 1, 1988, each Member who attains age 65 will be credited with Benefit Service for service completed after attaining age 65 (including service completed before January 1, 1988). However, a Member will be credited with Benefit Service for service completed after attaining age 65 only if—

(A)  the Member completes at least one Hour of Service on or after January 1, 1988; and

(B)  the Member would otherwise be credited with Benefit Service for such service pursuant to the applicable provisions of this section 3.6.

(b)  **Benefit Service for Nicholstone Employees.** Effective July 1, 1993, Employees who were Nicholstone Employees shall be credited with Benefit Service pursuant to the rules in subsection (a)(2), above, for all employment with the Company or an Affiliate. Nicholstone Employees shall not be credited with any Benefit Service for periods of employment with the Company or Nicholstone Companies, Inc. prior to July 1, 1993; except for purposes of calculating their Nicholstone Benefits as provided in section 2.1(aa) for purposes of calculating a Nicholstone Employee's Nicholstone Benefit, such Employee shall receive one year of "credited service for benefit accrual" for any plan year under the Nicholstone Plan that commenced prior to October 1, 1979, during which he was credited with 1,000 hours of service, excluding all such service for which he received a total distribution of his benefit under the Nicholstone Plan, unless such amount is repaid by the Nicholstone Employee within two years of reemployment, with interest (compounded annually) of 5 percent, and also excluding, for

Nicholstone Employees who were not vested in a Nicholstone Benefit prior to a break in service, all years of credited service for benefit accrual under the Nicholstone Plan prior to a break in service if the Nicholstone Employee's number of consecutive one-year breaks in service equals or exceeds the greater of the aggregate number of such years of service prior to the break in service or five.

## 3.7 Leased Employees

A person who is not an Employee of the Company or an Affiliate and who performs services for the Company or an Affiliate pursuant to an agreement between the Company or an Affiliate and a leasing organization shall be considered a "leased employee" if such person performed the services on a substantially full-time basis for a year and the services are of a type historically performed by employees. A person who is considered a "leased employee" of the Company or an Affiliate shall not be considered an Employee for purposes of participating in this Plan or receiving any contribution or benefit under this Plan. A leased employee shall be excluded from this Plan regardless of whether the leased employee participates in any plan maintained by the leasing organization. However, if a leased employee participates in the Plan as a result of subsequent employment with the Company or an Affiliate, he shall receive eligibility service under section 4.1 and Vesting Service, but shall not receive Benefit Service, for his employment as a leased employee. Notwithstanding the preceding provisions of this section, a leased employee will be considered an Employee for purposes of applying the requirements described in section 414(n)(3) of the Code.

## 3.8 Special Provisions for Participants who Enter the Armed Forces

If a Member is absent from employment for voluntary or involuntary military service with the United States Armed Forces and returns to employment within the period required under the law pertaining to veterans' reemployment rights, he shall receive Benefit Service for the period of his absence from employment.

## 3.9 No Duplication of Service

A Member shall not receive any duplicative Benefit Service or Vesting Service for the same period of employment.

## Article IV. Eligibility and Participation

### 4.1 Date of Participation

(a)  Each Employee of an Employer on July 1, 1993 who was a "participant" as defined in and covered by the Plan on June 30, 1993, and any other person receiving or eligible to receive any benefits under the Plan on June 30, 1993, shall automatically continue to be a Member on July 1, 1993.

(b)  Each other person who is or becomes an Employee of the Employer on or after July 1, 1993 and who is not a participant in any other defined benefit or pension plan which is established by the Employer or is supported, in whole or in part, by the Employer's contributions shall become a Participant in this Plan on the first day of the month coincident with or following the latest of—

    (1)  the date he attains age 21;

    (2)  the date he becomes an Employee of the Employer; or

    (3)  the first anniversary of the date on which he first performs an Hour of Service for the Employer or a nonparticipating Affiliate, provided that he has been credited with 1,000 or more Hours of Service during the preceding 12 months, or if he has not been credited with 1,000 Hours of Service by such date, on the first day of the Plan Year following the first Plan Year (starting with the Plan Year in which his first anniversary of employment occurs) in which he is credited with 1,000 or more Hours of Service. This period shall be called a "year of eligibility service."

(c)  Prior to January 1, 1988, Employees who attained age 60 before their date of hire were excluded from the Plan. Effective January 1, 1988, each Employee who attained age 60 before his date of hire and who completes at least one Hour of Service on or after January 1, 1988 shall become a Participant in this Plan on the later of—

    (1)  January 1, 1988, or

    (2)  the date the employee otherwise meets the requirements of subsection (b).

Effective for Employees who attained age 60 on or before December 31, 1987 and who completed at least one Hour of Service on or after January 1, 1988, Vesting Service, as computed in accordance with section 3.5, and Benefit Service, as computed in accordance with section 3.6, shall include any period of service prior to January 1, 1988.

(d)  Nicholstone Employees shall become participants in the Plan on the first day of the month coincident with or following the latest of—

    (1)  July 1, 1993;

    (2)  the date he becomes an Employee of an Employer;

(3)  the date he attains age 21; or

(4)  the first anniversary of the date on which he first performs an Hour of Service for Nicholstone Companies, Inc, the Company or other Employer or nonparticipating Affiliate, provided that he has been credited with a year of eligibility service (as defined in section 4.1(b)(3)).

## 4.2 Reentry Into Plan Following a Break in Service

An Employee who—

(a)  is rehired following a Break in Service, and

(b)  was previously credited with a year of eligibility service (as defined in section 4.1(b)(3))

with an Employer or nonparticipating Affiliate shall receive credit for that year of eligibility service. He shall become a Participant on the later of the date he performs an Hour of Service following his reemployment or the date he otherwise meets the conditions of section 4.1.

## 4.3 Duration

An eligible Employee who becomes a Participant shall continue to be a Participant or Inactive Participant until he has a Break in Service, and also shall continue to be a Member thereafter for as long as he is entitled to receive any benefits under the Plan. If he has a Break in Service before becoming eligible to receive a benefit under the Plan, he shall cease to be a Participant or Inactive Participant until he again becomes eligible to become a Participant in accordance with the provisions of section 4.1 or 4.2.

If a Participant who has a Break in Service does not have any vested interest in his accrued benefit under the Plan, he shall be deemed to have received a distribution of such accrued benefit on the date of his Break in Service in accordance with section 5.10(b). If a Participant who was deemed to have received a distribution under this section 4.3 is rehired, he shall be treated as having repaid such accrued benefit on his date of rehire.

## 4.4 Transferred Employees

(a)  An Employee who is transferred from nonparticipating employment with the Company or an Affiliate into employment where he becomes a Participant under this Plan shall be credited with Vesting Service computed as provided in section 3.5 for all his employment with an Employer and nonparticipating Affiliates, before and after such transfer. Except in the case of an Employee who previously participated in a defined benefit pension plan described in section

5.13, any Employee who is transferred from nonparticipating employment with the Company or an Affiliate into employment where he becomes a Participant under this Plan shall not be credited with Benefit Service for employment prior to such transfer.

(b)    Any Participant who is transferred into employment as an Employee where he becomes an Inactive Participant shall continue to accrue Vesting Service (but not Benefit Service) under this Plan during the period he is an Inactive Participant. Any benefit to which he may become entitled under this Plan shall be determined on the bases of his Vesting Service before and after the date of such transfer, on the Benefit Service he had prior to the date of such transfer, and on the applicable Compensation under the Plan in effect at the time of his transfer to status as an Inactive Participant.

## 4.5 Employee of a Nonparticipating Affiliate who Becomes a Participant Following a Break In Service

An Employee of a nonparticipating Affiliate who incurs a Break in Service and who thereafter becomes a Participant under this Plan shall have his benefit calculated in the same manner as a transferred Employee.

## Article V. Benefits

### 5.1 Normal Retirement Benefits

(a)  Eligibility. A Member who attains his Normal Retirement Age while employed by an Employer or nonparticipating Affiliate shall be eligible to receive a normal retirement benefit under the Plan. Upon his retirement, such Member shall be eligible to receive a normal retirement benefit commencing on the date specified in section 7.1(a) and continuing thereafter on the first day of each succeeding month during his lifetime. A Member's right to receive his accrued retirement benefit under the Plan shall be 100 percent vested and nonforfeitable (except for reasons of death or reemployment) upon attainment of his Normal Retirement Age while employed by an Employer or a nonparticipating Affiliate.

(b)  Amount. Effective January 1, 1989, a Member who is eligible to receive a normal retirement benefit pursuant to subsection (a) above shall receive a monthly benefit payable at his Normal Retirement Age which when expressed as a Single Life Annuity is equal to one-twelfth of the sum of—

 (1)  .65 percent of the Member's Final Average Pay multiplied by the Member's years of Benefit Service, plus

 (2)  .60 percent of the Member's Final Average Pay in excess of the Member's Covered Compensation multiplied by the Member's years of Benefit Service (but not more than 35 years), plus

 (3)  effective July 1, 1993, the Member's Nicholstone Benefit, if any.

If a Member continues in employment beyond his Normal Retirement Age, his benefit upon retirement shall be calculated by using his Final Average Compensation and his years of Benefit Service as of his termination of employment.

(c)  Special Minimum Benefit. In the case of a Member who had completed 20 years of Benefit Service and had attained age 50 on or before January 1, 1989, the amount of such Member's normal retirement benefit under this section 5.1 shall not be less than a special minimum benefit equal to one-twelfth of the product of .9 percent of the Member's Final Average Pay multiplied by the Member's years of Benefit Service.

(d)  Minimum Benefit. The amount of a Member's normal retirement benefit under this section 5.1 shall not be less than the amount of the Member's protected accrued benefit under section 5.12. The amount of a Member's normal retirement benefit for whom a Retirement Trust Balance has been established shall not be less than the amount provided in section 6.6.

(e) **Continuation of Employment Beyond Required Commencement Date.** Under all circumstances, monthly normal retirement benefits shall commence no later than the date specified pursuant to section 7.6(a). In the event that a Member continues his employment beyond his required commencement date (as described in section 7.6(a)), the Member's required commencement date shall be his Annuity Starting Date for purposes of waiving the Qualified Joint and Survivor Annuity and electing an optional method of payment under section 5.9. The Member's normal retirement benefit shall be recalculated at the end of each calendar year, if necessary, in order to reflect continued employment and benefit accruals of the Member. In no event will a Member's retirement benefit at his Normal Retirement Date be less than his benefit prior to the commencement of benefits pursuant to section 7.6(a).

(f) **Other Adjustments.** A Member's normal retirement benefit shall be adjusted as follows:

    (1) The normal retirement benefit of a Member for whom coverage under the Preretirement Survivor Annuity has been in effect shall be adjusted as provided in section 5.5(e).

    (2) The normal retirement benefit of a Member who has a Retirement Trust Balance shall be adjusted as provided in section 6.6. If coverage under the Preretirement Survivor Annuity has been in effect for such Member, the portion of such Member's benefit not attributable to his Retirement Trust Balance shall be adjusted as provided in section 5.5(e).

(g) **Special Retirement Window Benefit.** In lieu of the benefit to which a Member may be entitled pursuant to this section 5.1, eligible Members who are Indianapolis Employees of the Rand McNally Book services Group of Rand McNally & Company may elect to receive a special retirement window benefit, as described in Appendix A, attached hereto and incorporated herein.

## 5.2 Early Retirement Benefits

(a) **Eligibility.** A Member whose employment with the Employer terminates after he has attained his Early Retirement Age, but before he attains his Normal Retirement Age, shall be eligible to receive an early retirement benefit under the Plan, commencing on the date specified in section 7.1(b) and continuing thereafter on the first day of each succeeding month during his lifetime.

(b) **Amount.** A Member eligible to receive an early retirement benefit under subsection (a) above shall receive a monthly benefit computed