### 7.8 Withholding and Rollovers

(a) Withholding from Distributions not Eligible for Rollover. An Employer may withhold from a Member's compensation and the Trustee may withhold from any payment under this Plan any taxes required to be withheld with respect to contributions or benefits under this Plan and such sum as the Employer or Trustee may reasonably estimate as necessary to cover any taxes for which they may be liable and which may be assessed with respect to contributions or benefits under this Plan. To the extent permitted in Code section 401(a)(13), the Trustee may also withhold from any payment under this Plan any amount assigned by the Member to the Employer for the payment of premiums for welfare benefits provided to the Member.

(b) Direct Transfers of Eligible Rollover Distributions. Effective January 1, 1993, the Committee shall establish procedures under which a Member (or surviving spouse) may elect to have all or part of the otherwise taxable portion of a distribution that constitutes an "eligible rollover distribution" (as described in Code section 402(c)) transferred directly from the Trust Fund to an "eligible retirement plan"; provided, however, that the amount of the distribution must equal at least $200, and, if less than the total amount distributed is transferred, the portion transferred must be at least $500.

For purposes of this provision, an "eligible retirement plan" shall mean an individual retirement account, an individual retirement annuity other than an endowment contract, or, in the case of a Member but not a surviving spouse, a defined contribution plan qualified under Code section 401(a) (and funded under a trust which is qualified under Code section 501(a)) which accepts rollover distributions or an annuity plan qualified under Code section 403(a).

In accordance with such procedures, the Committee shall provide a written explanation which summarizes appropriate tax, rollover, and withholding rules, as further described in Code section 402(f) to each Member (or surviving spouse) who receives an eligible rollover distribution. Such written explanation shall be provided by mail or personal delivery between 30 and 90 days before a withdrawal or distribution is paid out from the Plan, if such withdrawal or distribution constitutes an eligible rollover distribution; provided, that the 30-day requirement may be waived by the Member (or surviving spouse) in accordance with section 5.6 hereof.

(c) No Rollovers Accepted by the Plan. This Plan will not accept rollovers from any other plan.

# Article VIII. Incompetency

## 8.1 Incompetency

Every person receiving or claiming benefits under the Plan shall be conclusively presumed to be mentally competent and of age until the Committee receives written notice, in a form and manner acceptable to it, that such person is incompetent or a minor, and that a guardian, conservator, or other person legally vested with the care of his estate has been appointed. If the Committee finds that any person to whom a benefit is payable under the Plan is unable to properly care for his affairs, or is a minor, then any payment due (unless a prior claim therefor shall have been made by a duly appointed legal representative) may be paid to the Spouse, a child, a parent, a brother, or a sister, or to any person deemed by the Committee to have incurred expense for such person otherwise entitled to payment.

In the event a guardian or conservator of the estate of any person receiving or claiming benefits under the Plan shall be appointed by a court of competent jurisdiction, payments shall be made to such guardian or conservator, provided that proper proof of appointment is furnished in a form and manner suitable to the Committee.

To the extent permitted by law, any payment made under the provisions of this section 8.1 shall be a complete discharge of liability under the Plan.

# Article IX. Nonalienation of Benefits

## 9.1 Nonalienation of Benefits

No benefit payable at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment, garnishment, or encumbrance of any kind. Any attempt to alienate, sell, transfer, assign, pledge, or otherwise encumber any such benefit, whether presently or thereafter payable, shall be void. No benefit nor the Retirement Fund under the Plan shall in any manner be liable for or subject to the debts or liabilities of any Member or his beneficiaries entitled to any benefit.

## 9.2 Qualified Domestic Relations Orders

(a)   Notwithstanding section 9.1 or anything else in the Plan to the contrary, the Committee may direct the Trustee to comply with a qualified domestic relations order.

(b)   A "domestic relations order" is a judgment, decree, or order (including approval of a property settlement agreement) made pursuant to a state domestic relations law (including a community property law) which relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a Participant ("alternate payee").

(c)   A "qualified domestic relations order" is a domestic relations order which—

    (1)   creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable to a Member under the Plan;

    (2)   clearly specifies—

        (A)   the name and last known mailing address (if any) of the Member and the name and mailing address of each alternate payee covered by the order;

        (B)   the amount of percentage of the Member's benefits to be paid by the Plan to any alternate payee, or the manner in which such amount or percentage is to be determined;

        (C)   the number of payments or the period to which the order applies; and

        (D)   each plan to which the order applies; and

    (3)   does not require the Plan to—

        (A)   provide any type or form of benefit, or any option, not otherwise provided under the Plan,

      (B)   provide increased benefits,

      (C)   pay benefits to an alternate payee that are required to be paid to another alternate payee under a previous qualified domestic relations order, or

      (D)   pay any benefits to any alternate payee before the earlier of the Participant's termination of employment or the earliest benefit commencement date under the Plan.

(d)   After receipt of (1) a domestic relations order, (2) a proposed domestic relations order, or (3) notice of a pending domestic relations order, the Committee shall—

      (1)   promptly notify the affected Member and any alternate payee of the receipt of such order, proposed order, or notice of impending order and the Committee's procedure for determining the qualified status of domestic relations orders; and

      (2)   within a reasonable period after receipt of a certified order determine whether the order is a qualified domestic relations order and notify the Participant and each alternate payee of such determination.

(e)   The Committee shall establish a procedure to determine the qualified status of domestic relations orders and to administer Plan distributions in accordance with qualified domestic relations orders. Such procedure shall—

      (1)   be in writing;

      (2)   include a provision specifying the notification requirements enumerated in subsection (d) above;

      (3)   permit an alternate payee to designate a representative for receipt of communications from the Committee; and

      (4)   include such other provisions as the Committee determines, consistent with Code sections 401(a)(13) and 414(p) and regulations thereunder.

(f)   During any period in which the issue of the qualified status of a domestic relations order is being determined (by the Committee, a court of competent jurisdiction or otherwise), the Trustee shall, upon the direction of the Committee, segregate in a separate account under the Plan the amount, if any, which would have been payable to the alternate payee during such period if the order had been determined to be a qualified domestic relations order. If the issue of whether the order is a qualified domestic relations order is resolved by the end of the 18-month period commencing on the day the first payment would be required to be made under such order, then the balance in such segregated account, with any interest, shall be paid—

(1)  to the alternate payee specified in such order, if the order has
     been determined to be a qualified domestic relations order, or
(2)  to the person to whom payment would have been made in the
     absence of any order, if the order has been determined not to be
     a qualified domestic relations order.

If the issue of whether the order is a qualified domestic relations order
is not resolved by the end of such 18-month period, then the balance
in such segregated account, with any interest, shall be paid to the
person to whom payment would have been made in the absence of
any order, and any subsequent determination that the order is a
qualified domestic relations order shall be applied prospectively only.

# Article X. Financing

## 10.1 Financing

The Company shall maintain a Retirement Fund as a part of the Plan in order to implement and carry out the provisions of the Plan and to finance the benefits under the Plan, by entering into one or more Trust Agreements or insurance contracts, or causing insurance contracts to be held under a Trust Agreement. Any Trust Agreement is designated as and shall constitute a part of this Plan, and all rights which may accrue to any person under this Plan shall be subject to all the terms and provisions of such Trust Agreement. The Company may modify any Trust Agreement or insurance contract from time to time to accomplish the purpose of the Plan and may replace any insurance company or appoint a successor Trustee or Trustees. By entering into such Trust Agreements or insurance contracts, the Company shall establish a funding policy for the Plan, and shall vest in the Trustee and/or in one or more investment managers appointed under the terms of the Trust Agreement from time to time by action of its Board of Directors, responsibility for the management and control of the Retirement Fund pursuant to such funding policy. In the event the Board of Directors appoints any such investment manager, the Trustee shall not be liable for the acts or omissions of the investment manager or have any responsibility to invest or otherwise manage any portion of the Retirement Fund subject to the management and control of the investment manager.

## 10.2 Contributions

The Employers shall make such contributions to the Retirement Fund as shall be required under accepted actuarial principles to at least be sufficient to maintain the Plan as a qualified employee defined benefit plan meeting the minimum funding standard requirements of the Code with respect to its Members, as shall be determined from time to time under accepted actuarial principles by the Actuary. Except as provided in Title I and Title IV of the Act, all benefits payable under the Plan shall be payable only from the Retirement Fund, and no liability for the payment of benefits under the Plan shall be imposed on an Employer, Trustees, officers, directors, or shareholders of an Employer. (Forfeitures of an Employer's Members arising under the Plan for any reason shall be used as soon as possible to reduce the Employer's contributions under the Plan.)

### 10.3 Nonreversion

An Employer shall not have any right, title, or interest in the contributions made to the Retirement Fund under the Plan, and no part of the Retirement Fund shall revert to an Employer, except that—

(a)   Upon complete termination of the Plan and the allocation and distribution of the Retirement Fund as provided herein, any funds remaining in the Retirement Fund because of an erroneous actuarial computation after the satisfaction of all fixed and contingent liabilities under the Plan with respect to the Employers may revert to the Employers participating in the Plan at that time.

(b)   If a contribution is made to the Retirement Fund by an Employer by a mistake of fact, then such contribution may be returned to the Employer within one year after the payment of the contribution. All contributions to the Retirement Fund are contingent on the deductibility of such contributions. If any part or all of a contribution is disallowed as a deduction under Code section 404, then to the extent a contribution is disallowed as a deduction it shall be returned to the Employer within one year after the disallowance.

Any contributions returned to the Employer under subsection (a) or (b) above shall not include any investment earnings on such contributions but shall be net of any investment losses on such contributions.

# Article XI. Administration

## 11.1 Plan Administrator and Fiduciary

The Company shall be the administrator of the Plan within the meaning of section 3(16)(A) of the Act and the "plan administrator" within the meaning of section 414(g) of the Code, a fiduciary with respect to the Plan within the meaning of sections 3(21)(A)(i) and (iii) of the Act, and the named fiduciary under section 402 of the Act. It shall also be the Plan Administrator for purposes of the Plan. The Plan shall be administered by a Committee which is appointed by the Board of Directors and which shall act as the Company's agent for purposes of administering the Plan. The Committee shall be composed of as many members as the Board of Directors may appoint from time to time and shall hold office at the pleasure of the Board of Directors. Any member of the Committee may resign by delivering his written resignation to the Board of Directors. Vacancies in the Committee arising by resignation, death, removal, or otherwise shall be filled by the Board of Directors.

## 11.2 Compensation and Expenses

A member of the Committee shall serve without compensation for services as such if he is receiving full-time pay from an Employer or nonparticipating Affiliate as an Employee. Any other member of the Committee may receive compensation for services as a member, to be paid from the Retirement Fund to the extent not paid by the Employers. Any member of the Committee may receive reimbursement by the Retirement Fund to the extent not paid by the Employers of expenses properly and actually incurred.

## 11.3 Manner of Action

A majority of the members of the Committee at the time in office shall constitute a quorum for the transaction of business. All resolutions adopted and other actions taken by the Committee at any meeting shall be by a majority vote of those present at any such meeting. Upon the unanimous concurrence in writing of the members at the time in office, action of the Committee may be taken otherwise than at a meeting.

## 11.4 Chairman, Secretary, and Employment of Specialists

The members of the Committee may elect one of their number as chairman and may elect a secretary who may, but need not, be a member of the Committee. They may authorize one or more of their number or any agent to execute or deliver any instrument or instruments on their behalf, and

may employ such counsel, auditors, and other specialists, and such clerical, medical, actuarial, and other services as they may require in carrying out the provisions of the Plan. Such expenses shall be paid by the Retirement Fund to the extent not paid by the Employers.

## 11.5 Assistance

The Committee may appoint one or more individuals and delegate such of its power and duties as it deems desirable to any such individual, in which case every reference herein made to the committee shall be deemed to mean or include the individuals as to matters within their jurisdiction. Such individuals shall be such officers or other employees of the Employers and such other persons as the Committee may appoint.

## 11.6 Records

All resolutions, proceedings, acts, and determinations of the Committee shall be recorded by the Committee's secretary or under the Committee's supervision, and all such records, together with such documents and instruments as may be necessary for the administration of the Plan, shall be preserved in the custody of the secretary.

## 11.7 Rules

Subject to the limitations contained in the Plan, the Committee shall be empowered from time to time in its discretion to adopt bylaws and establish rules for the conduct of its affairs and the exercise of the duties imposed upon it under the Plan.

## 11.8 Administration

The Committee shall be responsible for the administration of the Plan. The Committee shall have all such powers as may be necessary to carry out the provisions hereof and may, from time to time, establish rules for the administration of the Plan and the transaction of the Plan's business. In making any such determination or rule, the Committee shall pursue uniform policies as from time to time established by the Committee and shall not discriminate in favor of or against any Member. The Committee shall have the exclusive right and the discretionary authority to make any finding of fact necessary or appropriate for any purpose under the Plan including, but not limited to, the determination of the eligibility for and the amount of any benefit payable under the Plan. The Committee shall have the exclusive right and the discretionary authority to interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan or in connection with the administration thereof, including,

without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision. The Committee shall make, or cause to be made, all reports or other filings necessary to meet both the reporting and disclosure requirements and other filing requirements of the Act which are the responsibility of "plan administrators" under the Act. To the extent permitted by law, all findings of fact, determinations, interpretations, and decisions of the Committee shall be conclusive and binding upon all persons having or claiming to have any interest or right under the Plan. The Committee may allocate responsibilities under the Plan (other than Trustee responsibilities) among named fiduciaries, delegate persons other than named fiduciaries to carry out fiduciary responsibilities (other than Trustee responsibilities), and approve agreements among Trustees to allocate fiduciary responsibilities, duties, and obligations among themselves.

## 11.9 No Enlargement of Employee Rights

Nothing contained in the Plan shall be deemed to give any Employee the right to be retained in the service of an Employer or to interfere with the right of an Employer to discharge or retire any Employee at any time.

## 11.10 Appeals from Denial of Claims

(a)   Denial of Claims. If any claim for benefits under the Plan is wholly or partially denied, the claimant shall be given notice in writing within a reasonable period of time after receipt of the claim by the Plan (not to exceed 90 days after receipt of the claim or, if special circumstances require an extension of time, written notice of the extension shall be furnished to the claimant and an additional 90 days will be considered reasonable) by personal delivery or by registered or certified mail of such denial. The notice of denial shall be written in a manner calculated to be understood by the claimant and shall set forth the following information:

   (1)   the specific reasons for such denial;

   (2)   specific reference to pertinent Plan provisions on which the denial is based;

   (3)   a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

   (4)   an explanation of the Plan's claim review procedure.

(b)  **Deemed Denial.** If a claimant does not receive a notice of denial within 180 days after receipt of the claim, the claim will be deemed to have been denied, and the claimant will be able to request a review of the denial pursuant to subsection (c).

(c)  **Review of Denial.** A claimant whose claim has been denied under subsection (a) or whose claim is deemed to have been denied under subsection (b) may request a review by the Committee of the decision denying the claim. A claimant may request a review by filing with the Committee a written request for such review. The request must be filed within 60 days after the notice of denial under subsection (a) is received, or within 60 days after a denial is deemed to have occurred under subsection (b). The claimant may review pertinent documents, and submit issues and comments in writing within the same 60-day period. If such request is so filed, such review shall be made by the Committee within 60 days after receipt of such request, unless special circumstances require an extension of time for processing, in which case the claimant shall be so notified, and a decision shall be rendered as soon as possible, but not later than 120 days after receipt of the request for review. The Participant or beneficiary shall be given written notice of the decision resulting from such review, which notice shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, and specific references to the pertinent Plan provisions on which the decision is based.

## 11.11 Notice of Address and Missing Persons

Each person entitled to benefits under the Plan must file with the Committee, in writing, his post office address and each change of post office address. Any communication, statement, or notice addressed to such a person at his latest reported post office address will be binding upon him for all purposes of the Plan and neither the Committee nor the Plan Administrator, the Employers, Trustee, or insurance company shall be obliged to search for or ascertain his whereabouts. In the event that such person cannot be located for a period of two years, such Member's benefit hereunder shall be forfeited and all liability for the payment thereof shall terminate; provided, however, that in the event of the subsequent reappearance of the Member or beneficiary prior to termination of the Plan, any benefit which was due and payable and which such person missed shall be paid in a single sum (with interest at a rate equal to that paid by one of the guaranteed investment funds in which Retirement Fund assets are invested, as designated by the Committee) and the future benefits due such person shall be reinstated in full.

### 11.12 Data and Information for Benefits

All persons claiming benefits under the Plan must furnish to the Committee or its designated agent such documents, evidence, or information as the Committee or its designated agent consider necessary or desirable for the purpose of administering the Plan. Such person must furnish such information promptly and sign such documents as the Committee or its designated agent may require before any benefits become payable under the Plan.

### 11.13 Indemnity for Liability

The Employers, jointly and severally, shall indemnify any officer, director, Employee, or Committee member against any and all claims, losses, damages, and expenses, including counsel fees, incurred by such individual and against any liability, including any amounts paid in settlement with the Committee's approval, arising from such individual's action or failure to act in connection with the Plan, except when such conduct is judicially determined to be attributable to the gross negligence or willful misconduct of such individual. The Company shall pay the premiums on any bond secured under this section 11.13 and shall be entitled to reimbursement by the other Employers for their proportionate share of such premiums.

### 11.14 Effect of a Mistake

In the event of a mistake or misstatement as to the eligibility, participation, or service of any Member, or the amount of payments made or to be made to a Member, Beneficiary, or other party, the Committee shall, if possible, cause to be withheld or accelerated or otherwise make adjustment of such amounts of payments as will in its sole judgment result in the Member, Beneficiary, or other party receiving the proper amount of payments under this Plan.

### 11.15 Self Interest

A member of the Committee who is also a Member shall not vote on any question relating specifically to himself.

## Article XII. Vesting

### 12.1 Vesting

No Member shall have any other vested rights under the Plan than such rights as may accrue to him as provided herein.

### 12.2 Amendment of Vesting Schedule

If the vesting schedule under this Plan is amended, each Participant on the later of the amendment adoption date or the amendment effective date shall have a nonforfeitable percentage (as of that date) which is not less than the Participant's nonforfeitable percentage determined without regard to the amendment. Upon the adoption of an amendment to the vesting schedule, to the extent required by applicable law and regulations, each Participant having three years of Vesting Service shall be permitted to elect to have his nonforfeitable percentage under the Plan computed without regard to such amendment. No amendment to this Plan may reduce the accrued benefit of a Participant prior to the amendment.

# Article XIII. Amendment and Termination

## 13.1 Amendment and Termination

The Company expects the Plan to be permanent, but the Company must necessarily and does hereby reserve the right to amend, modify, or terminate the Plan at any time by the action of its Board of Directors. The Company may make any modifications or amendments to the Plan, and retroactively if necessary or appropriate, to qualify or maintain the Plan as a plan meeting the requirements of Code section 401(a) and section 404(a) or of the Act, or any other applicable provisions of the Code or Act, or the regulations issued thereunder, or for any other reason. Subject to section 10.3, no amendment of the Plan shall cause any part of the Retirement Fund to be used for or diverted to purposes other than for the exclusive benefit of the Members or their beneficiaries covered by the Plan. Retroactive Plan amendments may not decrease the accrued benefits of any Member determined as of the time the amendment was adopted, unless such amendments are approved by the Secretary of Labor.

## 13.2 Distribution on Termination

Upon termination or partial termination of the Plan, that portion of any assets then held in the Retirement Fund allocable to Members and their beneficiaries shall be allocated, after payment of all expenses of administration or liquidation, for the following purposes and in the following manner and order, to the extent of the sufficiency of such assets:

(a)   first, to that portion of each individual's accrued benefit which is derived from his own contributions, if any;

(b)   second, in the case of benefits payable as an annuity—

    (1)   to any benefit which was in pay status as of the beginning of the three-year period ending on the termination date of the Plan, based on the provisions of the Plan (as in effect during the five-year period ending on such termination date) under which the benefit would be the least;

    (2)   to any benefit (other than a benefit described in section 13.2(b)(1)) which would have been in pay status as of the beginning of the three-year period if the Member had retired before the beginning of the three-year period; and if his benefits had commenced (in the normal form of annuity under the Plan) as of the beginning of such period, to each such benefit based on the provisions of the Plan (as in effect during the five-year period ending on such termination date) under which such benefit would be the least;

(c) third, applying section 4021 of the Act without regard to its subsection (c) for the purposes of this subsection—

    (1)    to any other benefits guaranteed under Title IV of the Act, determined without regard to section 4022B(a) of the Act; and

    (2)    to any additional benefits (if any) which would be paid under section 13.2(c)(1) if section 4022(b)(5) of the Act did not apply;

(d) fourth, to all other vested benefits under the Plan; and

(e) fifth, if any assets remain, to provide all other benefits under Article V which are "protected benefits" as defined in Code section 411(d)(6) and regulations thereunder for each Member which are not provided for above, accrued to the date of termination of the Plan, and in the order of priority described in subsections (c)(1) and (c)(2) above if the assets are not sufficient to provide such benefits in full.

Any remaining assets may revert to the Employer pursuant to section 10.3(a). Effective January 1, 1994, the benefit payable to any Highly Compensated Employee or former Highly Compensated Employee upon termination of the Plan shall be limited to an amount that is nondiscriminatory under section 401(a)(4) of the Code. Notwithstanding the foregoing, in the event the Plan terminates or there is a spinoff of part of the Plan (in excess of the 3 percent of plan assets permitted under Treasury regulation section 1.414(l)-1(n)(2)) within five years following the date of any merger of another plan into this Plan, and if the sum of the assets of this Plan after any such merger was less than the sum of the present values of the accrued benefits (whether or not vested) of both plans on a termination basis on the merger date, then a special schedule of benefits shall be created from the necessary (as identified by an enrolled actuary) data maintained by the Committee and shall be inserted in and modify the allocation priorities set forth above in this section 13.2 at the time of such termination or spinoff in accordance with Treasury regulation sections 1.414(l)-1(e) through (j) and any applicable regulations of the Pension Benefit Guaranty Corporation.

### 13.3 Merger, Consolidation, or Transfer

In the case of any merger or consolidation of the Plan with, or in the case of any transfer of assets or liabilities of the Plan to or from any other plan, each Member in the Plan shall (if the Plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the Plan had then terminated).

### 13.4 Restrictions on Benefits

Effective January 1, 1993, the annual benefits provided under the Plan to certain Members described in subsection (a) below shall be subject to the restriction described in subsection (b) below.

(a)  Members Affected. The restriction described in subsection (b) shall apply to all Members who are Highly Compensated Employees or former Highly Compensated Employees other than those who are not and were not one of the 25 Highly Compensated Employees receiving the highest compensation (as defined in Code section 414(q)(7)) in the current or any prior Plan Year.

(b)  Restriction. Subject to subsection (c), the annual benefits payable to any Member described in subsection (a) shall not exceed the annual amount which would be payable to the Member if his retirement benefit under section 5.1, 5.2, 5.3, or 5.4 (whichever is applicable) were payable in the form of a life annuity.

(c)  Restriction Not Applicable. A benefit payable to a Member described in subsection (a) shall not be restricted under subsection (b) if either of the following conditions are satisfied:

(1)  Immediately following the payment of such benefit, the value of the Plan assets is equal to at least 110 percent of the value of the current liabilities of the Plan, as defined in Code section 412(l)(7); or

(2)  The value of the total benefits payable to the Member (including any death benefits which are not provided by life insurance) is less than the greater of (A) 1 percent of the value of the current liabilities of the Plan, as defined in Code section 412(l)(7) or (B) $3,500.

# Article XIV. Participation in and Withdrawal from the Plan by an Employer

## 14.1 Participation in the Plan

Any Affiliate which desires to become an Employer hereunder may elect, with the consent of the Board of Directors, to become a party to the Plan and Trust Agreement by adopting the Plan for the benefit of its eligible Employees, effective as of the date specified in such adoption—

(a)  by filing with the Company a certified copy of a resolution of its board of directors to that effect, and such other instruments as the Company may require; and

(b)  by the Company's filing with the then Trustee or insurance company a copy of such resolution, together with a certified copy of resolutions of the Board of Directors approving such adoption.

The adoption resolution or decision may contain such specific changes and variations in Plan or Trust Agreement terms and provisions applicable to such adopting Affiliate and its Employees as may be acceptable to the Company and the Trustee or insurance company. However, the sole, exclusive right of any other amendment of whatever kind or extent to the Plan or Trust Agreement is reserved by the Company. The Company may not amend specific changes and variations in the Plan or Trust Agreement terms and provisions as adopted by the Affiliate in its adoption resolution without the consent of such Affiliate. The adoption resolution or decision shall become, as to such adopting organization and its employees, a part of this Plan as then amended or thereafter amended and the related Trust Agreement. It shall not be necessary for the adopting Affiliate to sign or execute the original or then amended Plan and Trust Agreement documents. The coverage date of the Plan for any such adopting Affiliate shall be that stated in the resolution or decision of adoption, and from and after such effective date, such adopting Affiliate shall assume all the rights, obligations, and liabilities of an individual employer entity hereunder and under the Trust Agreement. The administrative powers and control of the Company, as provided in the Plan and Trust Agreement, including the sole right to amendment, and of appointment and removal of the Committee, the Trustee, and their successors, shall not be diminished by reason of the participation of any such adopting Affiliate in the Plan and Trust Agreement.

## 14.2 Withdrawal from the Plan

Any participating Employer, by action of its board of directors or other governing authority, may withdraw from the Plan and Trust Agreement after giving 90 days' notice to the Board of Directors, provided the Board of Directors consents to such withdrawal. In the event such withdrawal constitutes a partial termination of this Plan, the Committee shall direct that the assets of the Retirement Fund shall be allocated to all Members affected by such partial termination in accordance with section 13.2. In the event of such partial termination of the Plan, only the affected Members in that part of the Plan which is terminated shall have fully vested and nonforfeitable rights in the benefits to be provided by the allocations (unless they were already fully vested prior to the partial termination). Distribution may be implemented through continuation of the Retirement Fund, or transfer to another trust fund exempt from tax under section 501 of the Code, or to a group annuity contract qualified under Code section 401, or distribution may be made as an Actuarial Equivalent immediate cash payment in accordance with the directions of the Committee; provided, however, that no such action shall divert any part of such fund to any purpose other than the exclusive benefit of the Employees of such Employer, prior to the satisfaction of all liabilities under the Plan as provided under section 10.3(a).

## Article XV. Top-Heavy Provisions

### 15.1 Application of Top-Heavy Provisions

(a)  **Single Plan Determination.** Except as provided in subsection (b)(2) below, for Plan Years beginning on and after January 1, 1984, if as of a Determination Date, the sum of the amount of the Section 416 Benefit of Key Employees and the beneficiaries of deceased Key Employees exceeds 60 percent of the amount of the Section 416 Benefit of all Members and beneficiaries other than former Key Employees, the Plan is top-heavy and the provisions of this Article shall become applicable.

(b)  **Aggregation Group Determination.**

    (1)  If as of a Determination Date the Plan is part of an Aggregation Group which is top-heavy, the provisions of this Article shall become applicable. Top-heaviness for the purpose of this subsection shall be determined with respect to the Aggregation Group in the same manner as described in subsection (a) above.

    (2)  If the Plan is top-heavy under subsection (a) above, but the Aggregation Group is not top-heavy, this Plan shall not be top-heavy and this Article XV shall not be applicable.

(c)  **Committee.** The Committee shall have responsibility to make all calculations to determine whether the Plan is top-heavy.

### 15.2 Definitions

(a)  "Aggregation Group" means the Plan and all other plans maintained by the Employer and nonparticipating Affiliates which cover a Key Employee and any other plan which enables a plan covering a Key Employee to meet the requirements of Code section 401(a)(4) or 410. In addition, at the election of the Committee, the Aggregation Group may be expanded to include any other qualified plan maintained by an Employer or nonparticipating Affiliate if such expanded Aggregation Group meets the requirements of Code sections 401(a)(4) and 410.

(b)  "Determination Date" means the last day of the Plan Year immediately preceding the Plan Year for which top-heaviness is to be determined, or in the case of the first Plan Year of a new plan, the last day of such Plan Year.

(c)  "Key Employee" means a Member who is a "key employee," as defined in Code section 416(i). For purposes of this Article XV, all references to any individual who is "not a Key Employee" shall be

deemed as references to a Non-Key Employee. The term Non-Key Employee shall mean any Employee who is not a Key Employee, including former Key Employees.

(d)  "Section 416 Benefit" means the sum of—

    (1)  the present value of the accrued benefit credited as of a Determination Date to a Member or beneficiary under the Plan and any other qualified defined benefit plan which is part of an Aggregation Group;

    (2)  the amount credited to a Member's or beneficiary's account under a qualified defined contribution plan which is part of an Aggregation Group; and

    (3)  the amount of distributions to the Member or beneficiary during the five-year period ending on the Determination Date other than a distribution which is a tax-free rollover contribution (or similar transfer) that is not initiated by the Member or that is contributed to a plan which is maintained by an Employer or nonparticipating Affiliate;

reduced by—

    (4)  the amount of rollover contributions (or similar transfer) and earnings thereon credited as of a Determination Date under the Plan or a plan forming part of an Aggregation Group which is attributable to a rollover contribution (or similar transfer) accepted after December 31, 1983; initiated by the Member and derived from a plan not maintained by an Employer or nonparticipating Affiliate.

The present value of the accrued benefits shall be determined as of the most recent valuation date used for the purposes of Code section 412 which is within the 12-month period ending on the Determination Date. The accrued benefit of a current Member shall be determined as if the Member terminated service as of such valuation date.

The account or accrued benefit of a Member who was a Key Employee and who subsequently meets none of the conditions of subsection (c) above for the Plan Year containing the Determination Date is not a Section 416 Benefit and shall be excluded from all computations under this Article XV. Furthermore, effective for Plan Years beginning on or after January 1, 1985, if a Member has not performed services for an Employer or an Affiliate during the five-year period ending on the Determination Date, any accrued benefit for such Member (and any account of such Member) shall not be taken into account.

Effective for Plan Years beginning on or after January 1, 1987, for purposes of this subsection, the accrued benefit of any Employee (other than a Key Employee) will be determined under the method that is used for accrual purposes for all plans of the Employer, or if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under Code section 411(b)(1)(C).

### 15.3 Vesting Requirements

If the Plan is determined to be top-heavy with respect to a Plan Year under the provisions of section 15.1, then a Member's interest in his accrued benefit shall vest in accordance with the following schedule:

| Years of Vesting Service | Vesting Percentage |
| --- | --- |
| Less than 3 | 0% |
| 3 or more | 100% |

The vesting provisions described in this section 15.3 shall not apply to a Member who does not have an Hour of Service after the Plan becomes top-heavy. If in a subsequent Plan Year the Plan is no longer top-heavy, the vesting provisions that were in effect prior to the time the Plan became top-heavy shall be reinstated; provided, however, that any portion of a Member's accrued benefit which was vested prior to the time the Plan was no longer top-heavy shall remain vested, and provided further that a Member who has at least three years of Vesting Service at the start of such Plan Year shall have the option of remaining under the vesting schedule in effect while the Plan was top-heavy.

### 15.4 Minimum Benefit

(a)  **Minimum Accrual Formula.** If the Plan is determined to be top-heavy under the provisions of section 15.1 with respect to a Plan Year, the accrued benefit, when expressed as an Annual Retirement Benefit (as defined below), of a Member who is not a Key Employee shall not be less than the difference between (1) and (2) where—

    (1)   is the product of—

        (A)  the number of years of Top-Heavy Service (as defined below); and

       (B)   2 percent of the Member's average Compensation during the period of the five consecutive years of Top-Heavy Service during which the Member had the greatest aggregate Compensation;

but such product shall not exceed 20 percent of the Member's average Compensation; and

    (2)   is the amount of the Annual Retirement Benefit that would be provided by the Member's account balance attributable to Employer contributions under a defined contribution plan which is included in an Aggregation Group.

(b)   **Participation in Top-Heavy Defined Contribution Plan.** If the Plan is determined to be top-heavy and a Member participates in this Plan and a top-heavy defined contribution plan maintained by the Employer or an Affiliate, the Member's accrued benefit, when expressed as an Annual Retirement Benefit of a Member who is not a Key Employee, shall not be less than the amount determined under subsection (a)(1) above.

(c)   **Definitions.**

    (1)   Annual Retirement Benefit means a benefit payable annually in the form of a single life annuity and which commences at age 65. If the benefit is payable in another form or commences at another time, the amount described in subsection (a) above shall be adjusted on an Actuarial Equivalent basis.

        Preretirement death benefits shall not cause a reduction in the amount of the benefit.

    (2)   A year of **Top-Heavy Service** shall be credited for each year of Credited Service which is credited with respect to a Plan Year in which the Plan is top-heavy.

## 15.5 Limit on Annual Additions: Combined Plan Limit

(a)   **General.** If the Plan is determined to be top-heavy under section 15.1, Code section 415(e) shall be applied by substituting "1.0" for "1.25" in applying such Code section to the Plan. The transitional rule of Code section 415(e)(6)(B)(i) shall be applied by substituting "$41,500" for "$51,875."

(b)   **Exception.** Subsection (a) above shall not be applicable if—

    (1)   section 15.4 is applied by substituting "3 percent" for "2 percent";

    (2)   section 15.4 is applied by increasing (but not by more than 10 percentage points) "20 percent" by 1 percentage point for each year for which such plan was taken into account under this subsection; and

(3)    the Plan would not be top-heavy if "90 percent" is substituted for "60 percent" in section 15.1.

(c)    **Transition Rule.** If, but for this subsection, subsection (a) above would begin to apply with respect to the Plan, the application of subsection (a) above shall be suspended with respect to a Member so long as there are—

(1)    no Employer contributions, forfeitures, or voluntary nondeductible contributions allocated to such Member; and

(2)    no accruals under a qualified defined benefit plan for such Member.

## 15.6 Collective Bargaining Agreements

The requirements of sections 15.3 and 15.4 shall not apply with respect to any Employee included in a unit of Employees covered by a collective bargaining agreement between Employee representatives and an Employer or nonparticipating Affiliate if retirement benefits were the subject of good faith bargaining between such Employee representatives and such Employer or nonparticipating Affiliate.

## Article XVI. Miscellaneous

### 16.1 Internal Revenue Service Approval

It is the intention of the Company to obtain a ruling or rulings by the District Director of Internal Revenue that—

(a)   the Plan, as in effect from time to time, with respect to all Employers, meets the requirements of Code section 401(a); and

(b)   any and all contributions made by the Employers under the Plan are deductible for income tax purposes under section 404(a) or any other applicable provisions of the Code.

### 16.2 Applicable Law

The Plan and all rights hereunder shall be governed by and construed in accordance with the laws of the State of Illinois to the extent such laws have not been preempted by applicable federal law.

### 16.3 Severability

If a provision of this Plan shall be held illegal or invalid, the illegality or invalidity shall not affect the remaining parts of the Plan and the Plan shall be construed and enforced as if the illegal or invalid provision had not been included in this Plan.

### 16.4 No Guarantee

Neither any member of the Committee, the Plan Administrator, the Company, the Employers, nor the Trustee in any way guarantees the Trust Fund from loss or depreciation nor the payment of any money which may be or become due to any person from the Trust Fund. Nothing herein contained shall be deemed to give any Participant, Member, or Beneficiary an interest in any specific part of the Trust Fund or any other interest except the right to receive benefits out of the Trust Fund in accordance with the provisions of the Plan and the Trust.

### 16.5 No Enlargement of Employee Rights

Nothing contained in the Plan shall be deemed to give any Employee the right to be retained in the service of an Affiliate or to interfere with the right of an Affiliate to discipline, discharge, or retire any Employee at any time.

### 16.6 Extent of Liability

It is the express purpose and intention of the Plan that, except as otherwise required by law, no liability whatever shall attach to, or be incurred by the stockholders, officers, members of the Board of Directors, members of the Committee, or any representative appointed hereunder by the Company, under or by any of the terms or conditions of the Plan.

### 16.7 Counterparts

This Plan has been established by the Company and may be executed in any number of counterparts, each of which shall be considered as the original, and no requirements to produce another counterpart shall exist.

### 16.8 Plan Binding on Successors

This Plan shall be binding upon all persons entitled to benefits hereunder, their respective heirs, next-of-kin, and legal representatives, and upon the Employers, their successors, and assigns.

### 16.9 Headings

Any heading or subheading in this Plan is inserted for convenience of reference only and is to be ignored in the construction of any provision hereof.

* * * * * * * * * *

**In Witness Whereof,** Rand McNally & Company has caused this Plan to be signed and its corporate seal to be hereunto affixed by its duly authorized officers, effective as of July 1, 1993, on this ____ day of _____, 1994.

Rand McNally & Company

Attest:

By _____
Its _____ President

By _____
Its _____ Secretary

(Seal)

# Appendix A

## Special Retirement Window Benefit For Certain Indianapolis Employees Of The Rand McNally Services Group Of Rand McNally & Company

Notwithstanding any other provision of the Plan to the contrary, certain eligible Members shall be entitled to a special retirement window benefit, in accordance with the terms set forth below.

1.  **Eligibility.** A Member may elect a benefit hereunder, in lieu of any other retirement benefit to which he would be entitled pursuant to sections 5.1 or 5.2 of the Plan, if such Member—

    (a)  is an Indianapolis Employee of the Rand McNally Book Services Group of Rand McNally & Company; and

    (b)  is not represented by a collective bargaining unit; and

    (c)  has attained age 55 on or before August 31, 1994; and

    (d)  is credited with at least 15 years of Vesting Service on or before August 31, 1994; and

    (e)  does not accept a permanent transfer from employment with the Rand McNally Book Services Group in Indianapolis to employment with any other division or location of the Company or any Affiliate; and

    (f)  elects to receive special retirement window benefits pursuant to this Appendix A, on or before December 31, 1994.

2.  **Benefit Amount.** The special retirement window benefit to which an eligible Member is entitled hereunder shall equal the amount of the benefit computed pursuant to section 5.1(b) or 5.2(b), whichever is applicable, increased by 30 percent.

3.  **Survivor Benefit.** If a Member either (a) elects a special early retirement window benefit pursuant to this Appendix A and dies prior to his Annuity Starting Date or (b) dies prior to December 31, 1994, his spouse shall be entitled to a preretirement survivor benefit based upon the amount of this special retirement window benefit.